We'll hear argument this morning in Case 13-1433, Brumfield v. Cain. Mr. DeSantis. Mr. Chief Justice, and may it please the Court. The decision of the State court in this case was to deny Kevin Brumfield a hearing on his claim of intellectual disability. That decision was based on an entirely unreasonable determination of the facts of Brumfield's mental condition. The Court specifically, the Court expressly stated in its decision to deny a hearing was, quote, based on the three bases that it laid out in its oral ruling at page 172 of the PEDAP, and I'd like to discuss each of those in turn. The first basis given by the State court was that Brumfield scored a 75 on the Wechsler IQ test. That's not just suggestive of intellectual disability, that's actual evidence of intellectual disability. And there was no testimony in the record to the contrary. This Court made it clear in Atkins. All of the clinical texts on which this Court relied on in Atkins make it clear. And the Louisiana Supreme Court had made it clear in Williams and in Dunn. The second basis for the State court's decision was that the defendant has not, quote, demonstrated impairment based on this record in adaptive skills. To demand or even expect that blood from the stone of a pre-Atkins record, where neither intellectual disability nor adaptive skills were even raised, is patently unreasonable. I'm sorry, but isn't, I don't, whether I agree with you or not, isn't it your burden to prove that he had some deficits in adaptive ability? You have to make the threshold showing. Yes, there's a threshold showing under Louisiana law. But what did you show that met that prong in any way? Sure. The standard under Louisiana law is a low one. It's a burden of coming forward with some evidence of objective facts that put the movement's intellectual disability at issue. How is that determination under State law pertinent to the question here? I was merely answering Justice Sotomayor's question as to what facts were put into evidence before the State court. I was setting the State standard, but But given, given the facts that were presented, this is what the language of the law is, of course, and the evidence presented in the State court proceeding, how is that pertinent on the Federal, Federal question? In other words, I don't think it would be a different, your burden, I don't think, would be different on the question that's presented here if the State law required a higher threshold or not. And we're not requiring, we're not challenging the State law as part of our Justice Sotomayor, I thought you said, well, the State has a very low standard. What difference does that make? Are you saying that if the State, with its regular processes, takes a Federal rule and misinterprets the rule as part of its process, then there's a Federal violation? Is that your point? No. There could be in that case, but that's not our argument. What difference does it make? And I think this was what the Chief Justice's concern was as well. What difference does it make that Louisiana has a low bar or a high bar? It may not make a difference, Your Honor, and it's not a critical part of our argument. I will say. And then while you're on this, suppose at the trial, in the sentencing phase, an expert, medical expert testified, in my view, this defendant does not have an intellectual disability, as we define that in medical terms. Would you be here? We still need. It's a hypothetical, of course. It's a hypothetical. Obviously, that wasn't this case. There was no testimony at the State trial or sentencing about intellectual disability. But in that case, we probably still would be here, because that's what happened in Williams. In the — in Williams 1, the defense's own expert at trial prior to Atkins had testified that the defendant was not intellectually disabled. And yet, the Louisiana Supreme Court sent it back for an Atkins hearing, because Atkins had entirely changed the legal landscape. Now, here the first question presented in your petition is whether a State court that considers the evidence presented at a Petitioner's penalty phase proceeding as determinative of the Petitioner's claim of intellectual disability under Atkins has based its decision on an unreasonable determination of the facts. So suppose that at the penalty phase proceeding there is evidence of five IQ tests all above 140. Would it be wrong to say that that's determinative? Again, obviously not our case. But in that situation, we addressed that in our blue brief for the purpose of making clear that we are not asking for a bright-line rule in a situation where there is uncontested evidence in the pre-Atkins record that disqualifies the individual from intellectual  If that were the case So the answer to the first question is no. It is not necessarily unconstitutional to regard the penalty phase evidence as determinative. It is in this case on this record, and Section D-2 is by its very nature a factual inquiry. Is your point that we are involved in a wholly different inquiry once Atkins is on the books? Because when you were before the State court at the sentencing hearing, you weren't talking about intellectual disability. That's correct. You were talking about some mitigating factors. So the State court never had before it an Atkins claim. The Atkins claim is raised for the first time on post-conviction review. That's exactly right. It's similar to the reasoning that this Court adopted in Bobby v. Byes. And in precisely this setting, the Louisiana Supreme Court held, or it explained, that prior to Atkins, as Your Honor just explained, a defendant only had to show diminished capacity as a mitigating factor and wasn't called upon to marshal demonstrations of intellectual disability or impairment in adaptive skills. Do you not think it would have been ineffective assistance of counsel pre-Atkins for a lawyer who had a client who was severely mentally disabled not to bring that fact forward in the sentencing hearing for consideration by the jury? Your Honor. Even though it wasn't, you know, a mandatory Federal basis for exempting him from a death penalty, surely you would want the jury to consider that kind of evidence, wouldn't you? Your Honor, this Court in Henry and again in Atkins recognized that putting on a defense of, quote, unquote, mental retardation, as the term was used at that time, is a double-edged sword. It's a much higher burden typically than the lower burden of putting on mitigating evidence of one's mental condition. And which brings me to the answer to Justice Scalia. I find that persuasive. It seems to me you have the burden to show that there was some basis for the State Supreme Court coming out the other way, and that basis should have been in the record, according to the Federal statute. And your only defense is, well, we didn't put anything in the record because Atkins had not yet been decided. No, Your Honor. And that goes to Justice Sotomayor's question as well. There was overwhelming evidence of impairment of inadaptive skills and intellectual disability in the State court record before the State court judge. All right. Fine. First — So let's get rid of that argument that Atkins had not been decided. That has nothing to do with the case, right? Okay. Turning to the evidence in this case, first, it was evidence before the State court judge that Mr. Brumfield had a fourth-grade reading level in terms of mere word recognition, not even comprehension. That's, again, actual evidence of impairment in adaptive skills. It was in the record before the State court that Mr. Brumfield, quote, has a basic deficit somewhere in his brain. It was in the record in the State court that he had a very low birth weight that put him at risk of neurological trauma. And it was in the record from Dr. Bolter that Mr. Brumfield was in trouble many, many, many years ago. The second expert before the State court — this is in the State court record — was Dr. Gwynne. She was a social worker. She didn't perform any tests of her own. But she found that Mr. Brumfield was sent to, quote, special education from the third grade, that he had been placed in and out of mental hospitals because no one knew what to do with him throughout his childhood and youth, that his main problem was that he cannot process information the way normal people do. And that's precise — that is a key indicator of intellectual disability that this Court recognized twice in Atkins. She testified that Brumfield — before the State court, she testified that Brumfield needed someone to, quote, help him function, that he did poorly even at recess as a child because he couldn't function with a lot of chaos around him, that at age 11, one of the intellectual functions and noted his slowness in motor development, and that the nurses literally from his birth recognized that there was something wrong with him and that he was slower than normal babies. Scalia. Am I wrong in my understanding that the record included an expert report stating that Brumfield possessed, quote, a normal capacity to learn and acquire information and that he had, quote, adequate problem and — and reasoning skills, problem-solving and reasoning skills? Is that correct? Your Honor, if — that's — I believe that's from the report of Dr. Jordan. Dr. Jordan did not testify in the State court proceeding. It was not in the record? It's actually an issue of debate whether Dr. Jordan's report was in the record. At the Federal hearing, the State conceded that it was not. And the — and the judge doesn't — the State court judge doesn't say he read it, although it was discussed by some of the experts, though not the portion you just read. Well, if it was in, it's pretty categorical. I — you know, I would think that's enough for the State court to hang its hat on. I don't think we can possibly find it. It was an unreasonable evidentiary finding if that was indeed in the record. Your Honor, it — it is. Because, again, the board — Did the State put it in the record? No. There's no evidence, Your Honor, that the State put it in the record. They have claimed at various points of the proceeding — And you didn't, but another — another expert referred to it. That's correct. Bolter — Dr. Bolter referenced Dr. Jordan's report regarding his IQ testing, that it was merely a screening test, and he was dismissive of it. But the State wasn't — didn't put it in evidence, so it wasn't — And they did not put Mr. Bolter — Are we talking about the trial record now? We're talking about the State trial record. At the sentencing. At the sentencing hearing. At the sentencing. That's correct. Second, it — it is very relevant that the State court ignored all of the objective facts after the defendant had been required only to come on with some evidence. There's no indication in the State court's decision, which he explains precisely, was based on the three factors that he just laid out. Did you ask the State court — The State court did not — Did you ask the State court for funds as a matter of Federal right? The other side says, did you ask for funds of State habeas only under State law? And not under Federal law. Is that true? We requested funds repeatedly in — in every petition before the Court. And in doing so, at least six times, we cited the Louisiana court of DuBose v. Whitley. That case discusses AIC and is based exclusively on AIC and Federal law. And this Court has made clear that if — that a claim is preserved by citing a case that relies on the appropriate Federal law.  Mr. DeSantis, I will perhaps talk about what is a little confusing, if not confusing, disconcerting in this case. There seems to be an inequity that one could perceive that says you can use the penalty phase record, but the other side can't to challenge your conclusions. Because that's basically what you're saying. And so how — and that was, I think, Justice Alito's point, which is you can see it in some circumstances, the State might. What makes your case different? Now, I do know that this — in this case, you're saying you provided some — a sufficient amount of some evidence. Correct. And the State was unreasonable by not giving you a hearing to determine the merits of your claim. Correct. All right. We don't even get to the issue of whether you were entitled to funds at that hearing, but I don't even think under Louisiana you wouldn't be. Once you've made the threshold showing. It's a distinct issue that question one does not depend on. All right. So answer my question, because that — it's a bit of a takeoff from Justice Alito's question, which is what is — why in your case can't the State rely on the evidence in the penalty phase if that's what you're relying on to make your sum showing? There really is no inequity there, Your Honor, and I'm glad you asked. The Louisiana Supreme Court explained it in Dunn, which predated the State court's decision in this case by almost a year. The court explained that although the defendant was not called upon to offer proof of intellectual disability on — at the trial prior to Atkins, the defendant did offer evidence of intellectual disability through that record. It was far less than the evidence that I just articulated. From there, the court explained that it was improper for the State court to then weigh any contrary evidence without the guidance of experts and essentially make a diagnosis itself as to whether the facts in the record are consistent or inconsistent with intellectual disability. The court always has to do it itself, even when there are experts. I mean, I don't understand that. Once the defendant comes forward with some evidence, which Mr. Brumfield did here overwhelmingly, if there's contrary evidence in the record, that's what the hearing is for. And that's all we were asking. We weren't asking for — Let me put this in perspective for a moment. Suppose we're in the district court on a petition for habeas. Federal district court. Federal — United States district court. And the question is, is this defendant entitled to a hearing? Is this petitioner entitled to a hearing? What is the standard that the district court must find met before the district court has a hearing on the facts, before the district court can have its experts? Does he have to find that the State collateral decision was clearly erroneous or that there was a prima facie evidence of disability that the State collateral court ignored? What does the district court have to do before it decides it's going to have a hearing and call its own experts? What standard must it meet? And did it meet that standard here? The answer to the final part of your question is yes. I would break it down this way. The question of whether an individual is intellectually disabled, this Court left to the States under Atkins. So the State standard is what applies for the showing that a defendant must make in order to prove his intellectual disability at the hearing. If that occurs pre-Atkins, as it did in this case, and we get to Federal habeas, under 2254d2, the Federal habeas judge looks at whether the factual determinations in this case of the defendant's mental condition were unreasonable. And here they were. The judge articulated three grounds, one of which was evidence of intellectual disability, one of which was irrelevant to the question of intellectual disability and ignored a plethora of evidence in the record putting Mr. Brumfield's intellectual disability at risk. Kennedy So are you saying that the district court, the United States district court, decided to have a hearing because it found that the State court's collateral review determination was fill-in-the-blank?  Gershengorn It was unreasonable. Unreasonable. Kennedy That's the AEDPA standard. Gershengorn That's the AEDPA standard, and d2. Kennedy Unreasonable because there were some open questions or because no one could read the record to say that there was evidence that he had no disability? Gershengorn Because the State court judge in this case expressly indicated what his decision was based on. It was based on three bases, all of which are entirely unreasonable, and no one could no one could say that they support a claim that the defendant is not intellectually disabled. Roberts We've heard a lot of discussion on the evidence at issue in this particular case. What is the broader significance of that discussion here? I'm concerned your answer to Justice Alito was that the answer to your first question was no. It's not necessarily the case that it's unreasonable determination in a situation where the State considers the evidence, blah, blah. But you're saying now that in this case it was. Gershengorn Correct. Roberts So what is the broader significance of the question you want us to decide, since you've conceded that the question, the answer to the first question presented is no? Gershengorn No. I'm sorry. I certainly did not mean to concede that the answer to the first question presented is no. My answer to Justice Alito's hypothetical was if there is uncontested evidence in the record disqualifying intellectual disability. Roberts Right. But your question is, if it's determinative, is it unreasonable? And Justice Alito gave you an example of where it was determinative, and you said it was not unreasonable. So as a general rule, the question is, the answer to the question is no. And in terms of what we're going to decide, I just need to know whether it is simply whether the facts in your particular case lead to a particular result, or if there is some more general legal rule that you're arguing for. Gershengorn Section 2254d-2 is on its face and by its text a factual inquiry. And this Court need do nothing more than rule that what this judge did in this proceeding on this pre-Atkins record was unreasonable. Sotomayor Go back to Justice Kennedy's question. And we're either working it backwards or working it forward, but you're not taking it step by step. Okay? Atkins, I believe, says that a State doesn't have to give you a hearing if you haven't met a threshold. And that's – and that threshold definition is a reasonable suspicion? Gershengorn No, the threshold definition in Louisiana. Sotomayor Not Louisiana.  What did Atkins say? Gershengorn Atkins doesn't articulate. Sotomayor It doesn't, but it does articulate that there has to be a threshold and it has to be some doubt as to mental capacity.  Gershengorn Some reason to believe that the individual is intellectually disabled. Sotomayor Some reason to believe – so that was the standard. Some reason to believe that an individual's mental capacity is compromised. Correct? Gershengorn Correct. Sotomayor So is your first argument that there was enough evidence to have – for you to have been entitled to a hearing? Gershengorn That certainly is part of our argument, but it doesn't explain the entirety of the Federal – of the error recognized – cognizable under Federal law under Section D2. Ginsburg Why don't you tell us the three – you said that in the State habeas, there were three things that were unreasonable. Gershengorn Correct. Ginsburg So tell us what they were. Gershengorn So the first – this is on pages 171 and 172 of the Petition Appendix. The first was that Mr. Brumfield had an IQ score of 75. We know as a matter of clinical fact that that is evidence of intellectual disability. The second was – Scalia There was a second. Was there not testimony about a second IQ test that was a little bit higher? That was one that was 75. Was there another one that was higher than 75? Gershengorn Not entered – that came from Dr. Jordan, who did not testify. And his report actually doesn't say what he scored there. And the evidence at trial that came out about it was Dr. Bolter saying what Dr. Jordan did was merely a screening test, which is not reliable anyway. So there is no other number in the record. The second prong articulated by the State court was that Mr. Brumfield had not demonstrated impairment in adaptive skills. This Court, the Louisiana Supreme Court, have all indicated that because Atkins changed the playing field, it is unjust and unreasonable to look to a pre-Atkins record for that determination. However, the record from that pre-Atkins trial and sentencing was replete with evidence which the State court never mentions in his decision. I thought the former was the question you sought to bring before us, namely that the State court couldn't use it at all, period. I mean, question one that you presented in your petition is as follows. Whether a State court that considers the evidence presented at a Petitioner's penalty phase proceeding as determinative of the Petitioner's claim of intellectual disability under Atkins has based its decision on an unreasonable determination of the facts. Whether a State court, any State court, not this particular State court, but whether any State court that makes its decision based upon a pre-Atkins penalty phase hearing is automatically, has automatically made an unreasonable determination of the facts. Wasn't that the question you presented? We did not intend that the question presented to be, to sound more like a legal question that would become a matter of law. Breyer, that's what it sounds like. I thought your case included the following. Atkins says you cannot sentence to death and execute an intellectually disabled person. So Mr. Smith, whose case is not final, says to the judge, Judge, I would like to produce evidence I am intellectually disabled. The State says, no, you can't. That would clearly violate Atkins, wouldn't it? Correct. Now, suppose it says, yes, you can't. Now, we don't have in Atkins a standard which says when you do and when you don't have to State, let this person present evidence. We don't say it. But the State has found one. The State of Louisiana has a standard. And I take it if that's a good enough standard, that's what we should follow. And that standard from State v. Williams says, we will give you a hearing if you, Mr. Smith, provide objective factors that will put at issue, put at issue, the fact of mental retardation, if you will come forward with some evidence to put your mental condition at issue. And so I guess unless we think Louisiana can't use that standard, that that standard is good enough for Federal purposes. And therefore, the issue is, did your client and you put forward some evidence to put your mental condition at issue? And as long as you came forward with some evidence, then unless we're prepared to write some new Federal standard for when you have to give a hearing and when not, that's the question. And you're saying, among other things, of course, Judge, as you're telling us, of course we put forward some evidence. In fact, we think we put forward a lot more, and we would have put forward a lot more if the hearing hadn't been preempted. Isn't that your argument? That is correct. That is our argument. So let's get to the point. Well, I think that's important, that that be your argument. Well, I don't want to intrude. I mean, it's important if it really is your argument. And it is. It really is our argument. I don't want to intrude too much on your rebuttal time, but as the case has been argued, I think you're making a strong argument that is purely a factual argument about this case, that you're not making an argument about the categorical rule about not considering evidence at a pre-Atkins penalty phase proceeding. And unless you can point to precedent that shows that it was clearly established that you had a right to funding, then your inability to put in evidence via the funding is not to be considered. And all that is before us is whether on the evidence that was in the record at the State post-conviction proceeding, it was an unreasonable application of Federal of constitutional law. That's the question, right? No, Your Honor. Respectfully, that would be under D-1. Under D-2, the question is whether All right, this is an unreasonable determination of fact, but it's purely fact-bound. Yes, that's the nature of D-2, and that's the question on which this Court granted certainty. There's no broader legal issue involved here? Not on D-1. Not on our first question. No cross-cutting legal issue. Not on our first question presented. On in the whole case. Our second question presented is a question of whether the State court application of Federal law was unreasonable and contrary to Federal law, and we think it was, as spelled out in our brief. But the first question presented does not depend on that. Mr. Chief Justice, I'll reserve my time for rebuttal. Thank you, counsel. Ms. Burns? Mr. Chief Justice, and may it please the Court, I would like to just begin by recapping that what is at issue here is whether the ultimate factual conclusion that was made by the State habeas court, was it reasonable and entitled to epidefference under whatever viable support was available in that record. The magistrate judge on April the 15th of 2008, in her recommendation to the district court, which was, in fact, adopted and signed off on by the district court, found that there was, in fact, failure to put forth objective factors in this case and that he should not have been given an Atkins hearing. Of course, you can't know whether it's unreasonable or not unreasonable unless you know what standard you're trying to meet. And my impression is, and that's why I went on at length, you heard what I said, and it's really to you, I just want to be sure he adopts it, the standard seemed to be the standard you are entitled to a hearing, says Louisiana, indeed a new one, if you meet the standard of State v. Williams. And that seemed to me good enough to be a Federal standard in the absence of any other. Now, am I right about that or wrong? The Court, the cases have held that for funding or for unreasonable Casers. Forget funding for the moment. There must be sufficient factors set forth, objective factors, not mere conclusive. No, I agree with that. I just want to know factors to show what. And am I right in saying in the absence in Atkins of any standard about when you have to have a hearing, that the State standard is good enough? What he wants is a hearing. He doesn't want us to, he'd like it, but he doesn't want, we don't have to say whether this person is intellectually disabled or not. He wants a hearing. And there is nothing in Atkins that says what the standard is to give him a hearing. Therefore, I looked at the State standard from Williams and thought that's good enough to serve as a Federal standard. Now, am I right or wrong? The standard is under deference to the State and to the State of Louisiana and to our mental retardation, intellectual disability statute, that there are three prongs. No, no, you're not answering my question. Of course we defer to the State. And we defer to the State when it makes what judgment? The judgment you, Mr. Defendant, are not entitled to a hearing. So what's the standard under which they decide whether he's entitled to a hearing or not? And I thought it's State v. Williams. Am I right or am I wrong? The failure to meet an adaptive prong, you have to put some evidence forward. Excuse me. Are we going around in a circle, a little bit of a circle? It seems to me that if what happened here was the right thing, the Federal court went back and said, did the State properly preclude this Petitioner from putting on or discovering evidence? Did it improperly fail to hold a hearing? And the Court there said, by the Court's — by any standard, there was some evidence, certainly by the State standard, but even by a constitutional standard, there was some evidence of incompetency, he was entitled to a hearing, they didn't give it to him, so now I will give him the hearing, because this is Federal habeas. And, in fact, we have said if a State improperly precludes you from developing a claim, then there is no deference owed to the State. So what we're really looking at was, was the Federal hearing properly granted? You did not argue that on the basis of the evidence produced at the Federal hearing that this man was not intellectually disabled. You have put all your eggs in the basket of on the record that didn't permit a hearing, he didn't make out a threshold finding. That's been your only defense so far. The two issues that were presented to the Fifth Circuit were both that there should have been — that there should never have been a hearing in this case, which is still our position, for failure to give deference under AEDPA, and secondly, that he did not make— Sotomayor, if we disagree with that, if we disagree with that, what are you left with? Well, then it needs to be, if you find that there should have been a hearing, then you need to remand it back to the Fifth Circuit for review of the facts. Right. Ah, to view the conclusion from the facts developed there. Absolutely. And of course, our position to the Fifth Circuit was you should look at both of these issues. You look at AEDPA, and if you should find that there should have been a Federal hearing, then at that point we ask you to look to the fact that he did not make a preponderance case which they made a preliminary finding of in footnote 8. But that isn't — that isn't — at this moment, I'll put it once more and see if I get an absolute definite answer from you. And I'm overstating, but if I had to decide at this moment whether there is enough evidence for you to win on the point, is he intellectually disabled, I would say you win. If I decide, have to decide whether or not he presented enough evidence to get a hearing, I would say you lose. Now, that's why it's important to me to know, are we trying to decide here whether there was enough evidence such that the State, under Federal law, was unreasonable in not granting him a hearing? There I look at the standards of Williams, and I think you lose. If we're deciding something else, like whether he's intellectually disabled, and I'm repeating myself, I think you win. That's why I want your answer to the question of which are we deciding or both. The point is that no evidence, not one adaptive deficit was ever presented in the State habeas. Kagan. Kagan. Ms. Burns, I think what Justice Breyer is driving at is just this, and reasonable people might disagree on the answer to this, but I think, you know, the determination that the State court was making at that moment was whether to have a hearing. And under Louisiana law, I don't think you disagree with this. I don't think anybody could disagree with this. Under Louisiana law, you have a hearing when the defendant has come forward, and it's the burden is on the defendant, but when the defendant has come forward with some evidence, some evidence that raises a reasonable doubt as to his mental capacity. That's the standard that's in Williams. It's repeated again and done. You don't disagree with that. I do not, Your Honor. And so what Justice Breyer is suggesting is that when we realize that that's the determination that the State court is making, whether the defendant has come forward with some evidence putting his mental capacity at issue, it looks awfully like an unreasonable determination of facts to say that this record does not meet that standard. That's all that the case is about, isn't it? I disagree. I disagree. This is almost a reverse Hall situation in the States looking at it. Because if you look at Hall, Hall was trying to rest totally on an IQ. Here, he's trying to do the same thing to say, oh, there's a 75, possibly we concede a higher IQ than that. But in Hall, there was a preclusion of the adaptive, which this Court has said is integral to the showing. Now, one adaptive deficit, well, I think we're at a bit of a gap here. Adaptive was not relevant to the determination at the sentencing hearing, because there was no actance. They were trying to show a mental deficit, but the adaptive comes in when we're making an actance determination, and that was never before the sentencing court. It's only after actance decided that adaptive becomes relevant. But I did — I wanted to ask you something in this record that's disturbing, and maybe you can explain it. There is a brief, you know it, it's by Justice Calagaro, that says there were 18 people who were sentenced to death, and before actance. Then actance is decided. Everyone except for this Petitioner got a hearing in the State court. Is that true? That is not true. And if Your Honor will indulge me, I can go case by case very — it will lead into my time, but I'll be glad to do that. And Don? Please don't. In many of those cases, there was either a pretrial showing of mental retardation, something in the record that was serious, a diagnosis which was never present in this case. There was no mention of the word intellectual disability in Kevin Brumfield's case until June 16th of 2003, after actance was decided. And that is the first time after actance was decided that he made this claim and says I have a 75 IQ, I have adaptive deficits without specifying one of them, and they were on onset prior to 18. He did not meet his standard under actance. And Ms. Dunn, if we could go back. And just on this point, you said he didn't meet the standard, and the standard is, as Justice Breyer suggested and you agreed, the one that comes from Dunn. And what I understand Mr. Brumfield to be saying is, look, all I need is some evidence. The evidence that was in the trial record, even though it was pre-actance, the evidence that was in the trial record was I had a very low IQ, 75. In addition, there was some evidence of adaptive deficits. Even though they weren't trying to prove this point, evidence came in that he didn't read very well, he didn't write very well, he had problems processing information. So that there was all that evidence. And then you sort of top it. When you look at the what the Court said, I mean, basically each one of the three things that the Court said was just wrong. You know, the 75 is evidence of disability. There was evidence of adaptive functioning. And this idea that the Court had that evidence relating to an antisocial personality somehow precluded the finding of mental disability is wrong as well. So I guess the question that Justice Breyer's question really leads to is, like, what's not some evidence here? And didn't the Court just misunderstand what record it was looking at and what it was doing? I would disagree respectfully. And I would also ask this Court to remember that the Court here looked at the entire record, and that is the point. It seems to me that's the point you have to attack. Does the State saying that there has to be some evidence, does that mean if there is one item of evidence, even though it's outweighed by everything else, it's contradicted by other witnesses, if there's one little peppercorn of evidence, you have to go on to a hearing. Is that what the State rule means, or does it mean when you consider the entirety, including the rebuttal evidence, is there reasonably some evidence of his mental disability? Justice Scalia, it is the entirety of the record. I cannot underscore that. The first thing that the State did at the sentencing hearing was to reintroduce the 41 witnesses who testified, their testimony, as well as the 159 exhibits that went into the very sophisticated, premeditated planning of his crime. Sotomayor, wait a minute. Then there is a legal question here, and the legal question is, can a State make the final determination of mental incapacity, or lack thereof, based on a trial record that did not address the issue? That was the question presented, and you're saying it can. And what your adversary is saying, if there is some evidence of mental incapacity that I'm entitled to a separate hearing that addresses that question alone, I can put in additional evidence and contradict whatever happened at the penalty stage. That's what his point is. Why is he wrong? He's wrong because that would require, if mental retardation was not raised, which it could have been in this case as a mitigator, there's any other relevant mitigating circumstances if he was under the definition. Sotomayor, if I may disagree with that, the rationale of this Court in Atkins is that  that doesn't get them off. It's the Court's process in society that will not have a consensus to execute mentally retarded people. That falls in the face of saying that juries then are inclined to execute them if they show some evidence of mental retardation. Breyer. I think we're all on the same page here, and I think we've made some progress in this. Because I agree with you and I agree with Justice Scalia, that what we have to do, and there isn't to do, is to look at the whole record and see, keeping in mind the fact that it was a pre-Atkins record, and they didn't know about Atkins, but looking at the whole record, is the Louisiana court clearly wrong? Is it unreasonable in saying there wasn't enough evidence, even though there has to be some, which is up to them pretty much how they say the sum, but they're unreasonable in saying that there wasn't some evidence justifying a hearing. And the only way to do that is for us to read it. Is that right? The record has to be read. Do you agree with that? I would agree that the entirety of the record has got to be read. It cannot be taken in a vacuum as counsel would have you believe that this judge was myopic. I haven't read the whole record, you know, and I doubt that I'm going to. And I doubt that this Court is going to read the whole record in all of these Atkins cases in the future. I mean, what you're asking is, you don't think it's fantastical? I do, Your Honor. And that's my whole point, is if you make the argument that in every one of these cases where mental retardation was not raised as an issue, it opens the floodgates for every pre-Atkins case to have to be reexamined, to have to be given a hearing. No. Not every one. The Petitioner's counsel conceded that if in this hearing, at the sentencing hearing, medical evidence was that in the opinion of the expert witness, this defendant has no intellectual disability, this would be a different case. That's not in this case. And what is in this case, and you have still not answered Justice Breyer's question echoed by Justice Kagan, don't we look at Dunn and Williams to see what the standard is? Absolutely. And you have not said yes, and you have not said no. Yes, that is the law. All right. But that still requires him to come forward with not just some evidence, but significant factors, significant objective factors to determine whether to do it. He said, if I had money, I would investigate and I would come up with a lot more than I did at the sentencing hearing, but the State won't give me any money. Justice Ginsburg, if I may address this issue, because unlike the majority of cases that this Court has analyzed in an AEDPA deference, although under a Strickland umbrella normally in terms of mitigation and in effectiveness of counsel, by filing separate claims for funding, this man was awarded, at the time of this trial, approximately $10,000 in funding, which would be approximately $30,000 today for investigators, for investigative services, for a sociologist who was board certified, for two neuropsychologists, and Dr. Guin testified, she conducted 28 to 32 interviews. She procured every medical school record that included prior psychiatric and psychological analyses of this defendant, including a witness. Ginsburg's What addition? Is there an addition that was put in? He did get funding when he was in Federal court. No. He got funding in the State. This is in the State court to flesh out any possible defense that could be- I'm not talking about the sentencing hearing. I'm talking about the Federal habeas. What was their additional evidence? That was just the – apparently that they just showed up and they had the money. There was never a hearing. He showed up one day. He got the experts, and I don't know how the funding was granted because he just showed up with those reports, filed them into as an amended habeas in State, in district court, and as a result of the reports that he got independently, that's what triggered the- Sotomayor, in the State court, did Petitioner say, give me a hearing, and if you do, I will produce additional evidence without having funding, or did he say, give me a hearing, and if you – and provide me with funding so that I can put in additional evidence? He made a vague in his very first habeas petition, and this went on for a period of 44 months. The first petition says, I need about 10 different types of experts and probably will need money. Then he filed four motions to continue, saying, I am still reviewing this record and I do not know what experts I will be needing. Then when he came in on the hearing, there was never – although there was a claim at the very, very end, Claim 105, which was the last claim, he never – he never filed a separate motion, as had been done in everything pretrial in this case. He just came in, he sat mute, he didn't say to the judge, which was – which would be the Louisiana standard, Your Honor, that you need to rule on this ahead of time, I still need time to investigate. There was never any kind of objection, any kind of moving for the funds, or any kind of specificity. And as a result of that, the reviewing State habeas court dismissed those claims with prejudice for failure to make them out with particularity. Alito, unless we know the answer to that question, I don't know how we can answer the question of whether there should have been a hearing. If he wasn't going to produce anything more at the hearing than what was already in the record, there would be no point in granting a hearing. And so if the only purpose of the hearing was to allow him to put in additional evidence with funding, the case comes down to the question whether it was unconstitutional, whether under AEDPA it was clearly established that it was unconstitutional for the State court to deny funding for this purpose. There was never – and my point again is, just as he did not make the threshold for the Atkins hearing, he did not make any kind of threshold and showing of specificity for any expert funding. You just – you just don't have the right to think, sure, he'd rather have had funding, but he wanted the hearing regardless of whether he was going to get funding. He could go out and seek pro bono support. He could try to go back to the same experts that he had used at the sentencing. So even without funding, the opportunity for a hearing might have been worth something to him. And what's clear isn't it – this is the – you said that there's questions as to whether he asked for funding or didn't ask for funding. What's clear is that he asked for a hearing. Isn't that right? He did ask for a hearing, but to get a hearing again, you have to meet a threshold. And I might add to the Court that it would have been, as in many other cases, a relatively simple manner to go back to have approached Dr. Bolter, Dr. Jordan, Dr. Ewan, and just said, look, a case named Atkins has come out in 2002. You have previously evaluated this defendant. Would it now make any difference to you in view of the holding in that case, would  Often in order to obtain a hearing, a party who is moving for a hearing has to make a proffer of what will be shown at the hearing. It makes no sense to say we're going to have a hearing and I want a hearing and I have the burden of proving at the hearing that I'm entitled to something, but I don't have any evidence to prove the point that I need to prove. And my question is, it does seem to come down to funding, unless there's something in the record, and maybe you or your counsel can point to something in the record that shows that he wanted a hearing even if he wasn't going to have funding. He proceeded with the hearing that day without making any type of objection and proceeded to the merits. He, first of all, did not file any separate act claim. I consider that very important because that was the procedure that was followed. Scalia, you're saying he doesn't want funding. He didn't want funding, you're saying, right? No. He made a nebulous claim for funding and said, well, you know, I'm reviewing this, I don't know what extra. He proceeded without it. Yes, he did. So he didn't want funding. He. That doesn't help your case. It hurts your case. He proceeded to the hearing that day. Counsel, in looking at the record, what are we supposed to do with Dr. Jordan's report? Might I direct this Court to the magistrate judge's recommendation, which is found in document 37, page 17, footnote 7, where she references a certain page of Dr. Jordan's report. And it's, we don't know. It is a defendant's burden when we file for discovery to at least file whatever reports are going to be used in response. That's a bit of a cop-out. You're the prosecutor. Was it admitted at the sentencing hearing? It was not admitted at the sentencing hearing. As evidence. Right. But she had a copy of it, and as Dr. Jordan's report. It was not before the State court. Apparently, it was viewed by the judge. You can still have, if it's not introduced as evidence by either party during the trial, it can still be filed as part of an answer and be part of that trial record which the court reviews. There was, it was discussed during, I gather, during cross-examination several times, what is the status of documents that are subject of cross-examination under Louisiana law? Are they part of the record? Are they simply extraneous material that can be consulted? What are they? If, of course, the rule is if someone has relied upon a report as both Dr. Bolter and Dr. Guin did in this case, and the report had been tendered to me, the Jordan report, we have the right. The report had been tendered what? The report had been tendered to the State. After much argument, they did not want to tender that report. But we had a copy of it, because I very, I think, very repletely cross-examined Dr. Guin. Scalia. Waiting for the last half of your sentence, if, right, if a witness testified about it, and if it was tendered to the court, then what is the conclusion? You can, of course, use that report. And it becomes part of the record. Yes, it does. Okay. Absolutely. Absolutely. We were told that the three reasons given by the State habeas court, that all of those three were wrong, that's what Mr. Counsel for the Petitioner told us. And what is your response to that? 75, we know that it isn't an absolute, that you can have a 75 score and still be intellectually disabled? 75 is, of course, within the range. And what's noticeably been absent from this record in reply brief is that everything has been taken down the five points by the SEM, but we never hear in these cases that truly are argued that the SEM can go up the five points. The first test that this defendant was administered when he was 11, which was a WISC, there was no number put down. But the doctor opined that it was a dull normal, which would be an 80 to an 89, which is more consistent if we took the five points up from the 75 that Dr. Bolter did. And additionally, we also – well, there was additional evidence, of course, at the Federal hearing that would put it more in that upper range, I believe. Sotomayor, could I go back to your answer to Justice Scalia? I've practiced elsewhere, and if anything's made part of the record, you give it an evidence number. Louisiana is different? It's not introduced into evidence? You just – No, not necessarily. No. The Buell report was not introduced by the defense into evidence. I will refer to Coroner's reports, Crime Lab reports. I do not necessarily file them into evidence. What I do is, as part of the answer to discovery, we attach them. They are part of the record. That is Louisiana procedure. As the answer – but how do we know the trial judge read it? Because he said so. He – first of all, under Harrington v. Brichter, it is the ultimate conclusion, the factual conclusion reached by the court, not necessarily the language that he used. It does not require that each and every ground that he relied on be articulated. And the Court stated in his rulings that I have examined this record. It says I've looked at the application, the response. The record, which in this case, just to educate the Court as to Louisiana habeas procedure, if a habeas judge is reviewing, he would get the 16 initial volumes of the case. There were four additional supplemental volumes. That includes everything from indictment to pretrial discovery, any answers, documents that were filed in answer to that. It includes the testimony during any suppression or funding hearings. It includes the voir dire, which in this case was 13 days. It includes the guilt phase, which was 6 days, and the penalty phase.  Ginsburg-Miller You were answering my question, and then you told me the 75IQ, but there were two others. There was nothing on adaptive behavior, but in fact there was evidence, some evidence of adaptive behavior. And then the third point, antisocial behavior. There's nothing inconsistent about being antisocial and having an intellectual disability. There isn't. It was simply, I think — I don't think you can necessarily fault the Court for saying that. He's just simply reciting that there was a finding in this case, because every doctor, every doctor. But the finding is perfectly consistent with intellectual disability. This individual was examined five times prior to the age of 18. He was given a whisk. Nobody found the words intellectual disability. In fact — Ginsburg-Miller Of course, because Atkins wasn't decided. Miller No. Mental retardation has existed since the beginning of time. It does not require the Atkins case to come into play. Nobody found him to be intellectually disabled. What they did find was conduct disorder, hyperactivity, under socialized, aggressive. And then as an adult, that morphed into antisocial personality behavior. They are two also, two separate and distinct items. And that is — that is contained in the Louisiana statute on intellectual disability, that certain things like learning disabilities, environmental, cultural, or economic disadvantage, emotional stress in the home or school, difficulty in adjusting to school, behavioral disorders, and other mental types of behavior, psychoses, are not necessarily indicative. Roberts Thank you, counsel. Mr. DeSantis, you have two minutes remaining. DeSantis Thank you, Your Honor. Thank you, Mr. Chief Justice. First, Dr. Jordan's report was not in the record, and that is made clear at the Petition Appendix 39A, Note 13, where the Court noted that counsel recognized that it was not in the record. Second, counsel articulated that there were scores — IQ scores in the 80s and 90s. That's not correct. Federal — Volume I of the Federal Hearing at page 57 shows that there were two other tests, one of 75 and one of 54. Finally, I want to emphasize that this Court recently recognized that it's unconstitutional to create an unacceptable risk that persons with intellectual disability will be executed. The State Court's determination of the facts in this case created precisely that risk. And now that we're here, it's not just risk, it's certainty. The only court to provide Mr. Brumfield with a hearing found that he is intellectually disabled. And unless this Court reverses the Fifth Circuit's erroneous ruling, an intellectually disabled person will be executed. Thank you. Roberts Thank you, counsel. The case is submitted.